**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 04 2014, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID M. ZENT**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

| | | |
|---|---|---|
| JUNIUS U. BROOKS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1305-CR-266 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

---

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D04-1301-FB-1

---

**February 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Junius U. Brooks appeals the sentence he received following his conviction of robbery as a class B felony. As the sole issue on appeal, Brooks contends his sentence is inappropriate in light of his character and the nature of his offense.

We affirm.

The facts favorable to the conviction are that Timothy Incremona and Alicia Elston worked as pizza delivery drivers for Tasty's Pizza in Fort Wayne, Indiana. On the evening of December 24, 2012, they received an order to deliver pizzas to the Eden Green Apartments in Fort Wayne. They drove to that address and went into the appropriate building. They telephoned the contact number provided for the order and a man answered and said he was upstairs in the building, but had not heard them knocking. He indicated he would be right down. Shortly thereafter, a man later identified as Rodney Lewis walked in the back door of the building and approached Incremona and Elston. When they told Lewis how much he owed for the pizzas, he indicated that he did not have enough money, walked to the back door, opened it, and yelled, "hey, I need some more money, I don't have enough." *Transcript* at 119. At that point, Lewis walked back toward Incremona and Elston, this time armed with a shotgun. He pointed the shotgun at Elston and Incremona and told them to set the food down and empty their pockets. They complied. When they turned and approached the front door, they were met there by a man later identified as Brooks. He asked them if they were okay and if anything had happened. They continued and exited through the front door.

Once outside, Elston called the police. While she was on the phone with police, she saw Brooks and Lewis exit the back door of the building and walk to another building in the

complex. When police arrived, Elston described the two men and told police she had seen them enter a nearby building. Police entered that building and observed fresh, muddy footprints on the floor leading to Apartment 1329. Officer Clayton Taylor knocked on the door of the apartment and announced that he was a police officer. He heard children inside the apartment, as well as "a lot of commotion, a lot of stuff being moved around, a lot of things happening inside." *Id.* at 134. Curtis Semons answered the door and claimed that his girlfriend and four children were the only people in the apartment at the time. Officer Taylor asked if they could enter and look around and Semons indicated that they could. Officer Taylor went to the bedroom, where he observed four small children curled up on the corner of the bed weeping. Behind the children, Officer Taylor observed Brooks's head and feet sticking out from underneath the covers. He ordered Brooks to stand up and show his hands. The officer observed the stock of a shotgun sticking out from between the mattresses, as well as a shotgun shell on the floor. Officer Taylor opened the closet door and found Lewis standing in the back of the closet on a red Tasty's heat bag. The officer took Lewis and Brooks outside, where Incremona and Elston identified them as the men who had robbed Incremona and Elston. A subsequent search of the apartment uncovered pizza boxes and the food that had been taken from Incremona and Elston.

Brooks was charged with robbery as a class B felony and was convicted of that offense following a jury trial. Following a sentencing hearing, Brooks was sentenced to the Department of Correction for fifteen years.

Brooks contends his sentence was inappropriate in light of his character and the nature

3

of his offense. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008). Per Indiana Appellate Rule 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Wilkes v. State*, 917 N.E.2d 675, 693 (Ind. 2009), *cert. denied*, 131 S.Ct. 414 (2010). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d at 1223. Brooks bears the burden on appeal of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073 (Ind. 2006).

The determination of whether we regard a sentence as appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State,* 895 N.E.2d at 1224. Moreover, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Id.* at 1225. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

4

In order to assess the appropriateness of a sentence, we first look to the statutory ranges established for the classification of the relevant offenses. Brooks was convicted of a class B felony – robbery. The advisory sentence for a class B felony is ten years; the maximum sentence is twenty years. *See* Ind. Code Ann. § 35-50-2-5 (West, Westlaw current through 2013 First Regular Session and First Regular Technical Session).

Beginning with Brooks's character, he claims that several factors reflect positively on his character and mitigate in his favor with respect to the length of an appropriate sentence. These include the fact that he graduated from high school and attended college, the fact that he served in the Marine Corps, from which he claimed he received a medical discharge after attaining the rank of staff sergeant, and the fact that he has three dependent children with whom he likes to spend time. According to the trial court, this information was self-reported and Brooks's credibility was suspect. For instance, Brooks claimed to have graduated from high school in 2010, and received an associate's degree from Harris School of Business in 2011. Even assuming this is true, it does not appear that Brooks is putting his education to good use. We share the State's and the trial court's skepticism that Brooks could have obtained the rank of staff sergeant in less than two years. Typically, this takes a considerably longer amount of time. Brooks's claimed devotion to his children is negated by his callous disregard for the children present at the scene of his arrest, as we will discuss below. We also review with skepticism his claim that he showed concern for the victims at the scene of the crime. Although it is apparently true that he asked Incremona and Elston if they were okay after Lewis exited the building and fled, there is reason to doubt the sincerity of his

5

claimed concern for their welfare. It is clear that this crime was premeditated and preplanned, and that Brooks and Lewis were acting in concert throughout the robbery. With this in mind, it seems likely that Brooks was merely playing his role when he expressed concern for the victims. In any event, even if it is possible to express genuine concern for a person one has just intentionally victimized, it would seem that the former does not outweigh the latter, as it reflects on the character of the victimizer.

Against these questionable indicia of good character stands Brooks's comparatively considerable history of criminal and delinquent behavior. At the time he committed these offenses, Brooks was only twenty years old. By that time, he had amassed eight juvenile adjudications, six of which would have been felonies if committed by an adult. As an adult, Brooks has two felony convictions and two misdemeanor convictions, in addition to the present offense. Also, at the time of sentencing, Brooks had eight outstanding active warrants for his arrest in Delaware.

As to the nature of the offense, although he did not physically take the money and pizza from Incremona and Elston, nor did he brandish a weapon in their presence, he did help plan the robbery and stood nearby, concealed, while it occurred. Although Brooks's role in the robbery itself was not particularly aggravating, his actions after the robbery was completed were far more troubling. Shortly after the robbery occurred, police tracked Lewis and Brooks to a nearby apartment. Upon entering and searching the apartment, Officer Taylor found Brooks hiding under the covers on a bed. The shotgun used in the robbery was located between the mattresses on that bed. A shotgun shell lay on the floor nearby. Also on

the bed were four small children, curled up on a corner of the bed and weeping. Brooks callously traumatized those children and placed them in the sort of physical danger that is inherent in a situation involving the presence of weapons during a confrontation with police officers investigating a crime. In view of this, and considering Brooks's character as discussed above, we cannot say that the sentence imposed is inappropriate.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.